UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| In re:<br><br>Robert Joseph Treinen, Jr.,<br>　　　　　　　　　　Debtor. | Case No. 05 B 74499<br>Chapter 13<br><br>Judge Manuel Barbosa |
|---|---|

## MEMORANDUM OPINION DENYING THE
## CHAPTER 13 TRUSTEE'S MOTION TO DISMISS[1]

This matter comes before the Court on a specific issue raised by the standing chapter 13 trustee, Lydia Meyer, (the "Trustee") and the debtor, Robert Joseph Treinen, Jr. (the "Debtor") concerning the application of certain post-petition earnings of the Debtor's spouse ("Mrs. Treinen") in the Debtor's chapter 13 case. For the reasons stated below, this Court finds that the $3,700 in wages earned by Mrs. Treinen should be considered disposable income devoted to the plan resulting in a shorter plan.

### NATURE OF CASE

The Debtor filed his chapter 13 bankruptcy petition on September 1, 2005. Mrs. Treinen elected not to join the Debtor in his petition for bankruptcy relief. The Debtor's schedules and proposed model plan were filed on September 19, 2005. The Debtor subsequently filed modified versions of his model plan on November 3, 2005 and April 21, 2006. Several modifications to the Debtor's schedules were also made during this period.

According to the Debtor's most recent plan, he proposes to tender seven

---

[1] Analysis and conclusions of law stated in this opinion are based on Title 11 of the United States Code in effect prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act (the "BAPCPA") of 2005.

1

monthly payments of $352 each followed by monthly payments of $406 for an additional 53 months. The total amount paid into the plan would be $23,982. The Debtor further estimates that General Unsecured Claims ("GUC") total $46,938. He proposes to pay not less than 28% on all allowed GUC.

Based on the information contained within the Debtor schedules, the Trustee filed motions to dismiss the Debtor's case on October 19, 2005, November 29, 2005 and April 25, 2006. The Debtor's model plan also drew an objection from a creditor, Washington Mutual Bank.

One of the issues raised in the Trustee's motions to dismiss was an allegation that Mrs. Treinen was employed but not contributing any money toward the household expenses. After considering testimony and evidence offered during a confirmation hearing on May 12, 2006, the Court denied the Trustee's motion and concluded that the $3,700 of additional income earned by Mrs. Treinen when she worked between the months of October and December during the year 2005 should be committed to the Debtor's plan as additional disposable income.

After the Court rendered its ruling in open court, the parties could not agree as to the treatment of those funds pursuant to this Court's ruling. Counsel for the Trustee asserted that the additional income should increase the base of the plan while counsel for the Debtor asserted that the addition of $3,700 to the plan payments would merely shorten the length of the plan. As the parties adhered to their respective positions, the parties were given the opportunity to submit any memoranda, including authorities, for this Court to consider. The Court did not receive any submissions from either side and an oral ruling was issued from the bench on June 9, 2006. The Court indicated that a

2

written memorandum would memorialize the findings and conclusions of law. The following represents the Court's written findings and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 157(a) and District Court Internal Operating Procedure 15(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## DISCUSSION

Before a court can confirm a chapter 13 plan, it must determine whether it satisfies the requirements outlined in § 1325 of the Bankruptcy Code (the "Code").[2] See *Johnson v. Home State Bank*, 503 U.S. 78, 87-88 (1991). Included in this list is what is commonly known as the "best interest of creditors test" or the "hypothetical liquidation analysis" provision, which requires a debtor to show that:

> (a) Except as provided in subsection (b), . . .—
>
> . . .
>
> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

11 U.S.C. § 1325 (a)(4).[3] The issue facing this Court is whether the $3,700 in post-

---

[2] Unless otherwise indicated, all statutory references in this opinion pertain to Title 11 of the United States Code.

[3] Section 1325(b)(1) states:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

3

petition income earned by Mrs. Treinen constitutes property of the Debtor's estate for the purposes of the hypothetical liquidation analysis. This determination affects whether the base amount to be paid toward the Debtor's plan would be increased by $3,700 or whether the payment of $3,700 would merely shorten the length of the plan. It is the Debtor's contention that a debtor's post-petition earnings are only to be considered for purposes of the "disposable income" calculation under § 1325(b) and have no effect on the liquidation analysis and therefore no impact on the total base of a plan.[4] The Court agrees.

Upon the filing of a bankruptcy petition, an estate is created that includes, subject to a few exceptions, "all legal or equitable interests of the debtor in property." See generally 11 U.S.C. § 541. This definition is expanded for the purposes of chapter

---

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b).

[4]For the purpose of confirmation of a chapter 13 plan, "disposible income" is defined as:

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)) in an amount not to exceed 15 percent of the gross income of the debtor for the year in which the contributions are made; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325 (b)(2).

13 cases. Section 1306(a) provides:

> **(a)** Property of the estate includes, in addition to the property specified in section 541 of this title—
>
> **(1)** all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
>
> **(2)** earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. § 1306 (a).[5] A number of courts have addressed the issue of which bankruptcy estate should be considered under the hypothetical liquidation analysis—the estate that would have existed had the debtor actually filed a chapter 7 case or the unique estate that is created for a chapter 13 case.

In *Forbes v. Forbes (In re Forbes)*, the Bankruptcy Appellate Panel for the Eighth Circuit addressed this issue with respect to whether a debtor could modify a confirmed plan to allow him to reduce its term from 60 to 40 months by making a lump sum

---

[5]One of the significant differences between the estate created when a case is commenced under chapter 7, versus chapter 13, concerns earnings a debtor may earn for services performed post-petition. Section 541(a)(6) states:

> **(a)** The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> . . .
>
> **(6)** Proceeds, product, offspring, rents, or profits of or from property of the estate, *except* such as are earnings from services performed by an individual debtor after the commencement of the case.

11 U.S.C. § 541(a)(6) (*emphasis* added). While § 541(a)(6) specifically excludes from a debtor's estate earnings derived from services performed post-petition, § 1306(a)(2) recaptures it for the purposes of creating a chapter 13 estate.

5

payment from settlement proceeds he received post-filing and post-confirmation. 215 B.R. 183, 186 (B.A.P. 8th Cir. 1997). Finding it necessary to address the question of "what constitutes property of the hypothetical Chapter 7 estate for purposes of comparative analysis under the best interests of creditors test," the Court stated:

> The focus of the best interests of creditors analysis rests upon a hypothetical distribution to unsecured creditors under Chapter 7. The more expansive Chapter 13 definition of property of the estate, found at 11 U.S.C. § 1306, is therefore irrelevant to this analysis. *See* 8 L. King, Collier on Bankruptcy ¶ 1325.05[2][a], p. 1325-17 (15th ed. rev.1997). Instead, Code Section 541 guides the liquidation inquiry, into what would be included in the estate as of the effective date of the plan. *See id.;* 5 W. Norton, Bankruptcy Law and Practice § 122:7, p. 122-63 (2d ed.1995 and Supp.1997).

*Id.* at 190.

This reasoning has been echoed by other courts that have confronted the issue. *See e.g., Sanchez v. Sanchez (In re Sanchez),* 270 B.R. 322, 323-24 (Bankr. D.N.H. 2001); *In re Green,* 169 B.R. 480, 482 (Bankr. S.D. Ga. 1994). *See also* COLLIER ON BANKR. ¶ 1325[2][a]: Timing of Valuation in Applying the Best Interests Test ("The most logical and practical method for such valuation is to consider the value of the property that would have been liquidated in a chapter 7 case filed on the date the chapter 13 petition was filed, i.e., that property that became property of the estate under section 541, but not that property that came into the estate only pursuant to section 1306(a).") In essence, the relevant question that should be addressed when engaging in the hypothetical liquidation analysis is "would this property have been subject to distribution amongst creditors under § 541 in a chapter 7 case?" The answer with regard to the present case is a clear "no."

6

For the purposes of a chapter 7 case, the bankruptcy estate includes property consisting of "proceeds, product, offspring, rents, or profits of or from property of the estate, *except such as earnings from services performed by an individual debtor after the commencement of the case.*" 11 U.S.C. § 541(a)(6) (*emphasis* added). If the Court were to assume that the Debtor's case had originally been filed as a chapter 7, a chapter 7 trustee could not have distributed the $3,700 in post-petition earnings to claimants of the Debtor's estate. *See Matter of Yonikus*, 996 F.2d 866, 870 (7th Cir. 1993).[6]

While § 1306(a) amends the definition of property of the estate for purposes of chapter 13, this Court sees the applicability of § 1306(a)(2) to the manner in which a plan is funded. *See generally, In re Rumker*, 184 B.R. 621, 629 (Bankr. S.D. Ga. 1995)("Chapter 13 allows a debtor to fund a plan out of the debtor's earnings . . . ."); *In re Flor*, 166 B.R. 512, 514-15 (Bankr. D. Conn. 1994)(same); *In re Ziegler*, 136 B.R. 497, 501 (Bankr. N.D. Ill. 1992)("Such future acquired property includes . . . earnings from services performed by the Debtors needed to fund the plan which are included within the statutory definition of property of the estate referenced in section 1306(a)(2)."); COLLIER ON BANKR. ¶ 1306.02[3]: Chapter 13's Inclusion of Postpetition Earnings; § 1306(a)(2)(15th. ed.)("[I]n chapter 13 cases commenced by debtors not engaged in business, postpetition earnings of the debtor constitute the principal means

---

[6]Neither could a chapter 7 trustee utilize this property if the Debtor's case was converted to a chapter 7. Section 348(f) provides that upon conversion of a chapter 13 case, after-acquired property does not form part of the converted estate unless the case was converted in bad faith. *See also Bell v. Bell (In re Bell)*, 225 F.3d 203, 217 (2d Cir. 2000).

of funding the plan.")

Accordingly, the consequence of this Court's earlier ruling in this matter is that the $3,700 of wages earned by Mrs. Treinen is to be considered disposable income devoted to the plan resulting in a shorter plan. This payment cannot be used to increase the base amount available for distribution to creditors in the Debtor's chapter 13 case since such payment would not have been available if the Debtor had instead filed a chapter 7 case. This Court has neither the figures nor the inclination to make the calculation for the parties but suggests that the disposable income should be devoted to shortening the duration of the plan with an appropriate amount of interest to compensate the creditors.

A separate judgment will be entered giving effect to the determinations reached herein.

Dated: July 10, 2006

MANUEL BARBOSA
United States Bankruptcy Judge